UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | No. 6:09-CR-39-GFVT-HAI |
| v. | ) | RECOMMENDED DISPOSITION |
| JIMMIE DARRELL GAY, | ) | |
| Defendant. | ) | |

*** *** *** ***

On referral from District Judge Van Tatenhove (D.E. 50), the Court considers reported violations of supervised release conditions by Defendant Jimmie Darrell Gay.

Judge Van Tatenhove entered a judgment against Defendant in June 2010 on a plea of guilty to receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2). D.E. 37. Defendant received a sentence of 97 months of imprisonment followed by lifetime supervised release, pursuant to 18 U.S.C. § 3583(k). *Id.* at 2-3. Defendant began his supervised release on February 16, 2016.

**I.**

On February 16, 2021, the United States Probation Office ("USPO") issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges two violations.

First, the Report charges a violation of the special condition that Defendant "shall not use or possess a device capable of creating a picture or video." According to the Report:

On January 6, 2021, during a routine home visit this officer observed a camera in plain view on the nightstand in Mr. Gay's bedroom. When asked about the camera, the defendant indicated that it was not his and he did not know if it worked. Mr. Gay granted verbal consent for this officer to inspect the camera. He became very nervous as I attempted to operate the camera in an effort to review the images on it. Being unable to do so, I asked the defendant if he would show me how to see the images on it and handed him the camera. I then observed Mr. Gay hit the trashcan button on the back of the camera in an effort to delete the data. I retook possession of the device and advised that I would be seizing it for forensic review. When questioned about what images would be found on the device, the defendant indicated that he had taken pictures of boys getting haircuts. He related that he takes pictures of images from his smart television.

On January 7, 2021, a forensic review was conducted on the camera and SD card that was contained within the camera. Numerous images of juvenile males of various ages were found on the device. Some images were of juvenile males getting a haircut and some were images of juvenile males in various stages of undress, however, none of the images involved complete nudity.

On February 2, 2021, Jimmie Gay reported to the Frankfort Probation Office to submit to a polygraph examination. During the pretest interview, Mr. Gay was questioned about the images of juvenile males found on the camera. He claimed that he thought the juveniles were handsome and he liked their haircuts. The defendant went on to add that he loves taking pictures and was experimenting with the camera to see if he could get good images from a television screen. Following the polygraph exam, Mr. Gay admitted that he had taken the images for sexual purposes and was aroused when he looked at them.

This is a Grade C Violation.

Based on the same information, Violation #2 charges a violation of the special condition that Defendant "shall not possess, view, listen to or go to locations where any form of pornography, sexually stimulating performances, or sexually oriented material, items or services are available." According to the Report, on January 6, Defendant "was found in possession of a camera that contained numerous images of juvenile males in various stages of undress that he admits were for his own sexual purpose." This is also a Grade C violation.

## II.

Defendant was summoned to appear, and the Court conducted an initial appearance pursuant to Rule 32.1 on March 16, 2021. D.E. 57. The Court set a final hearing following Defendant's knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. *Id*. The government initially moved for interim detention; Defendant argued for release. *Id*. After testimony and argument, the government ultimately withdrew its motion for detention, and Defendant was released on his existing conditions. He was ordered to surrender his smart phone and to remove any smart device, including any television, from his bedroom. *Id*.

At the final hearing on April 1, 2021, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 58. Defendant competently entered a knowing, voluntary, and intelligent stipulation to both violations. *Id*. For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for Violations #1 and #2, thus the government established both under the standard of § 3583(e).

The parties argued for a jointly recommended penalty. They asked for revocation with thirty days of incarceration at FMC Lexington, with a report date at FMC Lexington, to be followed by lifetime supervision. Defendant has serious health issues. He is confined to a wheelchair and suffers heart disease, diabetes, and other ailments, which is why the parties wished to have him placed in a medical facility. However, the deputy U.S. Marshal at the hearing was skeptical that Defendant would be placed in a BOP facility to serve such a short sentence; typically he would be placed in a local jail. Also, in the Court's experience, FMC Lexington has few available beds and the parties' request could be impossible to accommodate. The Court recommends that Defendant's release not be revoked, but that his lifetime supervision be continued with some modifications to the conditions.

Defendant's lifetime supervision was imposed prior to the Sixth Circuit's decision in *United States v. Inman*, 666 F.3d 1001 (6th Cir. 2012), which requires close examination of the imposition of a lifetime term of supervised release and accompanying special conditions. Accordingly, at the hearing, the Court addressed each of the special conditions for sex offenders in light of *Inman*.

### III.

The Court has evaluated the entire record, including the Report and accompanying documents, and the sentencing materials from the underlying judgment in this District. Additionally, the Court has considered all the § 3553 factors imported into the § 3583(e) analysis.

Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to receipt of child pornography. *See* D.E. 35 (plea agreement); 18 U.S.C. § 2252(a)(2). This is a Class C felony. For a Class C felony, the maximum revocation sentence provided under § 3583 is two years of imprisonment. *See* 18 U.S.C. § 3583(e).

The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x. 436, 438-439 (6th Cir. 2007). Under § 7B1.1, Defendant's admitted conduct would constitute Grade C violations. Given Defendant's Criminal History Category of I (the category at the time of the conviction in this District) and Grade C violations, Defendant's range, under the Revocation Table of Chapter 7, is three to nine months.

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violations. *See* 18 U.S.C. § 3583(b) & (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). Given the nature of Defendant's conviction, under 18 U.S.C. § 3583(h), he faces a lifetime maximum term of supervised release following revocation.

**IV.**

As noted, the parties jointly requested revocation with thirty days of incarceration at a medical facility, followed by lifetime supervision on the existing conditions. The Court recommends no revocation and that certain conditions be modified.

In support of its recommendation of revocation, the government noted that, although the underlying conviction did not involve production of pornographic materials, the current violations did involve a sort of production, which is an escalation. Defendant used a digital camera to take snapshots from television programs in which boys were partially undressed or receiving haircuts. Although the photos were not pornographic (nor were the television programs), Defendant admitted he produced the photos for his sexual gratification. The government pointed to paragraphs seven to nine of the PSR as evidence of Defendant's preoccupation with voyeurism and boys' hair. The government likened the pictures to an arsonist burning paper in a trash can in his back yard—harmless by itself but creating a potential for escalation. Accordingly, the government argued that Defendant's breach of trust, as well as the need for deterrence and protection of the public, warranted revocation.

On the other hand, in support of a downward variance, the government argued there was a "lack of clarity" concerning the USPO's instructions related to cellphones and smart

televisions. Additionally, Defendant's physical disability supported a variance, per USSG § 5H1.4. Due to his poor health, any release of Defendant is effectively home incarceration.

The defense expressed agreement with the prosecution's arguments. According to the defense, there are few tools for punishing Defendant because there is nothing to take away from him. The defense argued that Defendant's behavior would not have been violations if he had merely watched the television programming or viewed the same pictures in a magazine. The defense expressed doubt that, if challenged, Violation #2 could be proven by a preponderance of the evidence to involve "any form of pornography, sexually stimulating performances, or sexually oriented material." Accordingly, the relative weakness of the government's case warranted a downward variance.

Concerning conditions, the government requested a strict prohibition on internet access. The defense objected to the condition as overbroad. Such a strict prohibition would be impossible, the defense argued, given that Defendant lives with two other people who use the internet, and the common area contains a smart television. Once the Court read the recommended internet-device condition (described below), which includes an exception for device use with prior written approval of the probation officer, the government expressed no objection.

Defendant addressed the Court. He said that if he had to go back to prison for more than a year, he did not think he would survive, given his heart disease, diabetes, and infections on his legs. He asked to be allowed to stay with his sister for what "little time" he has left to live.

**V.**

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range of

6

three to nine months.  The Court recommends no revocation, but continuation of lifetime supervision with a few modifications to the special conditions for sex offenders.  The Court finds that Defendant continues to pose a clear continuing generalized risk of child exploitation crimes.  The conditions, described below, are warranted.  Defendant has a clear sexual interest in minor boys.  He has a history of obtaining images of boys for his sexual gratification, including using cameras, computers, and similar devices.  Access to electronic devices increases the risk that Defendant will obtain or produce child pornography.

Regarding the circumstances of the offense of conviction, receipt and possession of child pornography causes great harm to the victims.  *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that the "circumstances of the offense" described in 18 U.S.C. § 3553a)(1) refers to "the original offense of conviction").  Such pictures, especially if unleashed on the web, can effectively become immortal.

Regarding Defendant's history and characteristics, there is a significant continuing generalized risk of harm to vulnerable members of society.  So, there is also a need for specific deterrence and protection of the public.

Regarding the need for education and treatment, the parties and the Court agree that Defendant needs continued treatment.  This is covered by the conditions of release, which permit mental health treatment at the direction of the probation officer.  Probation has indicated that Defendant will be reassessed for treatment, given these violations.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender; the particular conduct is an important but secondary issue.  *See* Guidelines 7 Pt. A(3)(b).  There is a trust breach here, but its severity is tempered somewhat by the government's concession that Defendant's instructions regarding smart

7

televisions lacked clarity. However, Defendant initially denied that the camera was his and that he knew how it worked.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed by imposing a within-Guidelines sentence. Here, the Court recommends no revocation, though Defendant has a Guidelines Range of three to nine months. When varying from the Range, the Court must provide an adequate explanation and "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Johnson*, 640 F.3d at 205 (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). The Court must state "'the *specific reason* for the imposition of a sentence different from that described [in the applicable Guidelines or policy statements.]'" *Id.* (quoting 18 U.S.C. § 3553(c)(2)).

This case is highly unusual in that Defendant's severe health problems make him largely immobile. He is confined to the home he shares with his sister and her husband. Sending him to prison in his condition would not serve the purposes of the § 3553(a) factors. Instead, a renewed focus on treatment is warranted. The Court stresses to Defendant that he must be fully honest with his treatment providers. Given the above, the Court believes that no revocation, but reimposition of modified lifetime supervision (including a new treatment assessment) is sufficient, but not greater than necessary, to address the statutory sentencing factors.

The Court recommends reimposition of lifetime supervision. Lifetime supervision is authorized by 18 U.S.C. § 3583(k) and is consistent with the policy statement at Guideline 5D1.2(b). The standard conditions should be reimposed. In light of the Sixth Circuit's decision in *United States v. Inman*, 666 F.3d 1001 (6th Cir. 2012), the Court will examine each individual special condition. Instead of the conditions that were imposed on Defendant at his original

sentencing, the Court will recommend imposition of the Special Conditions adopted by the District for sex offenders following *Inman*. These current recommended special conditions differ slightly from those originally imposed on Defendant. The conditions are as follows:

### SPECIAL CONDITIONS OF SUPERVISION

1. The defendant shall participate in a program for treatment of mental health/sexual disorders; shall undergo a sex offender risk assessment, psychosexual evaluation and/or other evaluation as needed; shall be subject to periodic polygraph examinations and/or Computer Voice Stress Analysis (CVSA) testing, at the discretion and direction of the probation officer; and, shall follow the rules and regulations of the sex offender treatment program as implemented by the probation office.

2. The defendant's residence and employment shall be pre-approved by the probation officer and in compliance with state and local law.

3. The defendant shall not frequent, volunteer, or work at places where children under the age of 18 congregate (e.g. playgrounds, parks, day-care centers, public swimming pools, youth centers, video arcade facilities) unless approved by the probation officer, and shall have no contact with victims.

4. The defendant shall not associate or have verbal, written, telephonic, or electronic communication with any person under the age of 18 without the permission of the probation officer. This provision does not encompass persons under the age of 18 such as ticket vendors, cashiers, waiters, etc., with whom the defendant must deal in order to obtain ordinary and usual commercial services.

5. The defendant shall not possess, view, listen to, or go to locations where any form of pornography, sexually stimulating performances, or sexually oriented material, items, or services are available.

6. The defendant shall not possess or use a device capable of creating pictures or video, without the approval of the probation officer.

7. The defendant shall not rent or use a post office box or storage facility, without the approval of the probation officer.

8. The defendant shall register as a sex offender as prescribed by state law.

9. The defendant shall not possess or use a computer or any electronic device with access to any on-line computer service at any location (including place of employment) without the prior written approval of the probation officer.

>This includes any Internet Service provider, bulletin board system, or any other public or private network or email system.

>10. The defendant shall consent to the U.S. Probation Office conducting unannounced examinations of any and all electronic devices (i.e. computer system(s), internal/external storage devices, hand-held devices, etc.), which may include retrieval and copying of all memory from hardware/software and/or removal of such system(s) for the purpose of conducting a more thorough inspection and will consent to having installed on his computer(s) or electronic devices any hardware/software to monitor device use or prevent access to particular materials, and to consent to periodic inspection of any such installed hardware/software to insure it is functioning properly.

>11. The defendant shall provide the U.S. Probation Office with accurate information about his entire computer system (hardware/software) and all electronic devices; all account user names; all passwords used by him; and, will abide by all rules of the Electronic Device Restriction and Monitoring Program.

>12. The defendant shall submit his person, residence, office, vehicle, or any property under his control to a search conducted by the United States Probation Office, at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release. Failure to submit to a search may be grounds for revocation of supervision. The defendant shall inform any other residents that the premises may be subject to searches pursuant to this condition.

>13. The defendant shall provide the probation officer with access to any requested financial information.

>14. Ten years after the date of Judgment, the Court will conduct a hearing to review Defendant's status and reevaluate Defendant's conditions of supervised release.

In light of *Inman*, these conditions are appropriate for the reasons stated on the record during the April 2 hearing, as summarized below:

Special Condition #1, concerning treatment, is necessary in light of Defendant's history of sexual crimes. His violation behavior also shows he is capable of risky conduct. Continued use of polygraph examinations is warranted because of his initial dishonesty with the USPO.

Special Condition #2, concerning pre-approval of Defendant's residence and employment, is needed to help Defendant comply with state sex offender laws.

Special Conditions #3 and #4, concerning contact with minors, are justified based on Defendant's prior voyeuristic behavior and prior possession of child pornography. The similarities between his violation behavior and his past voyeurism and child pornography use heighten this justification. Following *Inman*, these conditions were rewritten to allow contact with minors upon approval of the probation officer.

Special Conditions #5 and #6 are crafted to eliminate Defendant's access to pornography. Here, Defendant has demonstrated that he poses a risk to vulnerable victims. Access to sexually stimulating material enhances that risk. Defendant has now produced images of boys for his sexual gratification (although not in an illegal form) without the USPO's approval. In light of his history, the USPO must be involved in the selection and configuration of Defendant's electronic devices. They need to know what devices and access he has, and what he can do with them. This condition is not a blanket prohibition, but allows for possession of such items after sufficient safeguards and monitoring strategies are in place, and is not more restrictive than necessary.

Special Condition #7, concerning post office boxes and storage facilities, is designed to help the USPO detect any use of sexually stimulating materials. The post-*Inman* version of this condition does not prohibit alternative addresses or storage facilities, but requires their disclosure to the USPO to diminish Defendant's ability to circumvent other conditions of his release.

Special Condition #8, requiring Defendant to register as a sex offender as prescribed by state law, is specifically contemplated in 18 U.S.C. § 3583(d).

Special Conditions #9, #10, and #11, regulate Defendant's access to electronic devices and permit inspection by the USPO. These conditions have been updated to address changes in technology. Defendant has displayed skill in using electronic devices such as computers, digital cameras, and smart televisions to obtain and create stimulating materials. These devices are becoming increasingly difficult to monitor, as Defendant himself has demonstrated. These conditions will enable the USPO to have knowledge of, and access to, any electronic devices and related hardware and software. These conditions will help deter further criminal and violation conduct and protect the public from the risks associated with pornography use by Defendant. The condition as written allows the use of electronic devices with prior written permission of the probation officer, and this addresses the defense's concern that the condition is overbroad. Defendant's sister and brother-in-law do have cellphones and, according to the parties, they communicate on Defendant's behalf related to his medical needs. In the Court's view, Defendant should not have access to internet-capable devices in *private*. But the Court understands the family has shared use of a smart television in a common area.

Special Condition #12, concerning searches, is authorized by § 3583(d). Because Defendant carries the special risks associated with sex offenders, the USPO needs authority to conduct searches and monitor his compliance with the law.

Special Condition #13, concerning financial disclosures, is designed to help the USPO monitor Defendant's purchases of electronic devices, internet services, and anything else implicated by the other conditions of supervised release.

Special Condition #14, concerning a reevaluation of these conditions after ten years, is recommended because the Court cannot predict the extent of supervision necessary at that time and what technological changes may occur in the future. A reevaluation will enable the Court to

adjust Defendant's conditions to address any of his emerging needs, any advances in technology, and any changes in the law that may occur. This review does not limit the USPO's ability to seek a modification of the conditions of release prior to the ten-year review.

Defendant's original special conditions included a prohibition on alcohol consumption, but this special condition is not necessary at this juncture. Defendant does not appear to have a history of alcohol abuse, so a total prohibition is not supported by the record. Defendant remains subject to Standard Condition #7, which prohibits "excessive use of alcohol." There remains a danger that alcohol use could lower his inhibition and affect his judgment, leading to violation conduct.

## VI.

Based on the foregoing, the Court **RECOMMENDS**:

1. That Defendant, upon his stipulation, be found guilty of both violations;

2. No revocation of supervised release; and

3. Reimposition of lifetime supervision, except that Defendant's Special Conditions should be replaced by the new, post-*Inman* conditions as described in Section V, including a review after ten years of Defendant's progress and his conditions.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the

District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission. If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 6th day of April, 2021.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge